570 Fed.Appx. 129
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also Third Circuit
LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,
Third Circuit.

James CIBULA, Appellant
v.
Charles FOX; Lloyd White; Michael Green; Jeffrey R. Imboden; Catherine C. McVey, Benjamin Martinez; Matthew Mangino; Juditch E. Viglione; John Tuttle; Kimberly A. Barkley; Cynthia Daub, Individually and in their official capacity as members and Employees of the Commonwealth of Pennsylvania Board of Probation and Parole; Mr. Steinberg, Psychologist, SCI Mercer; Deputy Superintendent Ruffo; Deputy Superintendent Mahlmeister; Mary Jane Eckert, CC; Thomas Burkhart; Jeffrey Lee Hayden; Cynthia Reed; Stephen Laufer; Unit Manager Cole; James P. Oppman; Job Supervisor Kusiak; Reagan Roberts; Robert Smiley; James Oppman, Individually and in their Official Capacity as Employees of the Pennsylvania Department of Corrections.

No. 13–3565.
|
Submitted Pursuant to Third Circuit
LAR 34.1(a) April 7, 2014.
|
Opinion Filed: June 26, 2014.

**Synopsis**
**Background:** Former state prisoner brought § 1983 action against employees of the Pennsylvania Department of Corrections and the Commonwealth of Pennsylvania Board of Probation and Parole, alleging they violated his procedural due process rights by classifying him as a sex offender without a hearing, violated the Eighth Amendment by subjecting him to abuse and harassment based on his sex offender status, and collectively conspired to violate his constitutional rights. The District Court for the Middle District of Pennsylvania, John E. Jones, III, J., 2013 WL 3871637, granted employees' motion to dismiss for failure to state a claim, and prisoner appealed.

**Holdings:** The Court of Appeals, Scirica, Circuit Judge, held that:

[1] due process claim against corrections employees accrued when prisoner arrived at prison and was labeled a sex offender;

[2] due process claim against parole board employees accrued when Board issued administrative action requiring prisoner to participate in sex offender treatment to be eligible for parole;

[3] continuing violations doctrine did not apply to due process claims; and

[4] continuing violations doctrine did not apply to Eighth Amendment claim.

Affirmed.

West Headnotes (5)

[1]  **Federal Courts**
  👉 Failure to mention or inadequacy of treatment of error in appellate briefs

In former state prisoner's § 1983 action against corrections and parole board employees, alleging violations of due process and the Eighth Amendment based on his classification as a sex offender and alleged harassment resulting from such classification, prisoner waived the right to contest parole board employees' absolute immunity for parole denials and dismissal of damages claims against corrections employees based on Eleventh Amendment immunity, where prisoner did not contest issues in his appellate brief. U.S.C.A. Const.Amends. 8, 11, 14.

1 Cases that cite this headnote

### [2] Limitation of Actions
  Civil rights

Former state prisoner's § 1983 due process claim against Pennsylvania Department of Corrections employees accrued, triggering Pennsylvania's two-year statute of limitations for personal injury claims, when he arrived at state correctional institution and was summarily labeled a sex offender without receiving any opportunity to contest the classification. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983; 42 Pa.C.S.A. § 5524(7).

2 Cases that cite this headnote

### [3] Limitation of Actions
  Civil rights

Former state prisoner should have been aware that a due process violation occurred, triggering Pennsylvania's two-year statute of limitations for personal injury claims applicable to § 1983 claims, when Pennsylvania Board of Probation and Parole issued administrative action, without holding a prior hearing, requiring prisoner to participate in sex offender treatment in order to be eligible for parole. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983; 42 Pa.C.S.A. § 5524(7).

4 Cases that cite this headnote

### [4] Limitation of Actions
  Liabilities Created by Statute

Pennsylvania Board of Probation and Parole's act of granting state prisoner parole within Pennsylvania's two-year limitations period applicable to § 1983 claims was not an unlawful action that could support application of continuing violations doctrine so as to toll limitations period for prisoner's due process claims against Board employees, based on the issuance of an administrative action, without holding a prior hearing, requiring prisoner to participate in sex offender treatment in order to be eligible for parole. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983; 42 Pa.C.S.A. § 5524(7).

12 Cases that cite this headnote

### [5] Limitation of Actions
  Matters Avoiding Bar of Statute

Former state prisoner, who allegedly suffered abuse and harassment after corrections employees allegedly disclosed his sex offender status to guards and inmates, failed to plead when the disclosure to other inmates and the abuse and harassment allegedly occurred, as required to support application of continuing violations doctrine in order to toll two-year limitations period under Pennsylvania law for prisoner's § 1983 claims under the Eighth Amendment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983; 42 Pa.C.S.A. § 5524(7).

5 Cases that cite this headnote

**\*131** On Appeal from the District Court for the Middle District of Pennsylvania, (D.C. Criminal No. 1–12–cv–02065), District Judge: Honorable John E. Jones, III.

**Attorneys and Law Firms**

Richard R. Gan, Esq., Gan Law Group, Harrisburg, PA, Ernest L. Jarrett, Esq., Detroit, MI, for Appellant.

Alan M. Robinson, Esq., Pennsylvania Board of Probation & Parole Executive Offices, Harrisburg, PA, Laura J. Neal, Esq., Pennsylvania Department of Corrections Office of Chief Counsel, Mechanicsburg, PA, for Charles Fox; Lloyd White; Michael Green; Jeffrey R. Imboden; Catherine C. McVey; Benjamin Martinez; Matthew Mangino; Judith E. Viglione; John Tuttle; Kimberly A. Barkley; Cynthia Daub, Individually and in their official capacity as members and Employees of the Commonwealth of Pennsylvania Board of Probation and Parole; Mr. Steinberg, Psychologist, SCI Mercer; Deputy Superintendent Ruffo; Deputy Superintendent Mahlmeister; Mary Jane Eckert, CC; Thomas Burkhart; Jeffrey Lee Hayden; Cynthia Reed; Stephen Laufer; Unit Manager Cole; James P. Oppman; Job Supervisor Kusiak; Reagan Roberts; Robert Smiley; James Oppman, Individually and in their Official Capacity as Employees of the Pennsylvania Department of Corrections.

Before: FISHER, SCIRICA, and COWEN, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

Plaintiff James Cibula brought an action under 42 U.S.C. § 1983 against several employees of the Pennsylvania Department of Corrections and the Commonwealth of Pennsylvania Board of Probation and Parole. He alleges defendants violated his procedural due process rights by classifying him as a sex offender without a prior hearing, violated the Eighth Amendment prohibition against cruel and unusual punishment by subjecting him to abuse and harassment based on this improperly imposed sex offender status, and collectively conspired to violate these constitutional rights. He appeals the District Court's order granting defendants' Rule 12(b)(6) motions to dismiss on the grounds that his claims were not filed within the two-year statute of limitations for § 1983 claims arising in Pennsylvania. We will ***132** affirm.[1]

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

I.

Cibula's claims arise from his incarceration in a Pennsylvania state prison after pleading *nolo contendere* to two counts of making terroristic threats in the Northampton County Court of Common Pleas on February 5, 2007. After successfully appealing his initial sentence of five to ten years, he was resentenced to consecutive terms of six months to five years on December 21, 2007. One week later, he was transferred to State Correctional Institution Mercer ("Mercer") from Northampton County Jail, where he had been imprisoned since February 6, 2006.

Upon arriving at Mercer, officers of the Pennsylvania Department of Corrections recommended that Cibula be treated as a sex offender, which under 42 Pa. Cons.Stat. Ann. § 9718.1 required him to participate in a sex offender treatment program. Cibula contends corrections officers made this determination without affording him any opportunity to contest his designation as a sex offender.[2] While he was serving his sentence, Cibula alleges corrections officers disclosed his sex offender status to guards and inmates, which resulted in other inmates abusing and harassing him.

[2] Though not entirely clear from the record, the confusion over Cibula's sex offender status appears to stem from the Commonwealth's withdrawal of sex-related charges against him when he pled *nolo contendere* to the terroristic threat charges.

He also contends his sex offender status impacted his parole applications. He petitioned for parole in July 2008, but the Commonwealth of Pennsylvania Board of Probation and Parole denied his request because he had not completed the sex offender treatment program. After this parole denial, Cibula attempted to participate in the program. But corrections employee Stephen Laufer discharged him from the program because "[r]eview of [his] record indicates all charges of sexual offending [were] withdrawn by the state." Cibula v. Fox, No. 1:12–cv–2065, 2013 WL 3871637, at *1 (M.D.Pa. July 25, 2013). Despite this discharge, the Parole Board again denied Cibula parole in August 2009 for failure to complete the program.

In addition to denying Cibula parole in August 2009, the Parole Board issued an Administrative Action on February 3, 2010, stating:

> Based on the information provided to the Parole Board, you have not attended and participated in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders as required by 42 Pa.C.S.A. Section 9718.1(a). Pursuant to 42 Pa. C.S.A. Section 9718.1(b), your offense requires that you participate in sex offender treatment in order to be eligible for parole. Therefore, you will not be interviewed by the Parole Board for parole/reparole until notification is provided by the Department of Corrections that you have attended and participated in

a Department of Corrections sex offender treatment program.

*Cibula,* 2013 WL 3871637, at *2 (footnote omitted). Cibula alleges the Parole Board, via this Administrative Action, classified him as a sex offender without a prior hearing. Based on the Administrative Action, he did not apply for parole in 2010 and 2011.

Without a petition from Cibula, the Parole Board granted him parole on May 11, 2011. He was released from prison on **\*133** August 18, 2011. Approximately fifteen months later, on October 15, 2012, Cibula brought a § 1983 suit against several board members and employees of the Parole Board (collectively, the "Parole Defendants"), alleging violations of his procedural and substantive due process rights and his Eighth Amendment right to protection against cruel and unusual punishment. The District Court dismissed the complaint without prejudice for failure to sufficiently allege that the Parole Defendants were responsible for the due process and Eighth Amendment violations.

On March 28, 2013, Cibula filed an amended complaint, joining several corrections employees as defendants (collectively, the "Corrections Defendants"), withdrawing his substantive due process claim, and including additional factual allegations supporting his procedural due process and Eighth Amendment claims. He now contends the Parole and Corrections Defendants violated his procedural due process rights by classifying him as a sex offender without a prior hearing, violated the Eighth Amendment prohibition against cruel and unusual punishment by subjecting him to abuse and harassment based on his purported sex offender status, and collectively conspired to violate these constitutional rights.

**[1]** The District Court dismissed the amended complaint because Cibula's claims were not filed within the two-year statute of limitations for § 1983 claims arising in Pennsylvania.³ The District Court held the statutory period for his claims against the Corrections Defendants accrued upon his arrival at Mercer on December 28, 2007, when he was classified as a sex offender without any form of process. And the claims against the Parole Defendants accrued when the Parole Board issued the Administrative Action on February 3, 2010. Both of these incidents occurred over two years before Cibula filed his initial complaint against the Parole Defendants on October 15, 2012, and his amended complaint against both the Parole and Corrections Defendants on March 28, 2013.

3   The District Court addressed a number of other issues, but Cibula only appeals the dismissal on statute of limitations grounds. Cibula contends "[a]ll other grounds asserted by the defendants [in support of their motion to dismiss] were either denied, or not addressed by the court." Appellant Br. 11. This is not entirely accurate. The District Court declined to address some issues, found in Cibula's favor on others, and decided two issues against Cibula. First, the court held the Parole Defendants enjoyed absolute immunity for adjudicative decisions, like parole denials. Second, the court dismissed damage claims against the Corrections Defendants for actions taken in their official capacities on Eleventh Amendment grounds. Cibula has waived the right to contest these issues on appeal because he did not raise them in his appellate brief. *See United States v. Pelullo,* 399 F.3d 197, 222 (3d Cir.2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

The District Court also rejected Cibula's contention that even if his claims accrued over two years before he filed suit, he can nonetheless bring them under the continuing violations doctrine. Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell v. Palmer Twp.,* 263 F.3d 286, 292 (3d Cir.2001) (internal quotation marks and citation omitted). The District Court held this doctrine did not apply because neither the Parole nor Corrections Defendants took any actions during the limitations period that could be considered part of a continuing violation. While the Corrections Defendants allegedly informed inmates of Cibula's status during the limitations **\*134** period, the District Court concluded the abuse and harassment he suffered as a result of these disclosures to be "merely the consequences of the original act of deeming [him] a sex offender in 2007." *Cibula,* 2013 WL 3871637, at *8. The District Court also found that the original act of labeling Cibula a sex offender upon his arrival at Mercer was "sufficiently permanent" to trigger his duty to assert his due process rights. *Id.* Cibula timely appealed.

## II.

Cibula challenges the District Court's dismissal of his [§ 1983](#) claims as barred by Pennsylvania's two-year statute of limitations. He argues that even if his claims did not accrue within two years of filing suit, they are nonetheless actionable under the continuing violations doctrine. We first address whether his claims were timely filed and then whether the continuing violations doctrine applies.

### A.

We exercise plenary review over the District Court's dismissal of a claim under Rule 12(b)(6) for failure to comply with the statute of limitations. *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.,* 543 F.3d 150, 160 (3d Cir.2008). The statute of limitations is an affirmative defense, which may be raised in a Rule 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir.1975)) (internal quotation marks omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (internal quotation marks and citation omitted).

For § 1983 claims, federal courts apply the statute of limitations governing personal injury actions in the state where the cause of action arose. *Garvin v. City of Philadelphia,* 354 F.3d 215, 220 (3d Cir.2003). In Pennsylvania, the statute of limitations for personal injury claims is two years. *Id.* (citing 42 Pa. Cons.Stat. Ann. § 5524(7) (West Supp.2003)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Kach v. Hose,* 589 F.3d 626, 634 (3d Cir.2009) (quoting *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998)). "The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known." *Id.* (citing *Barren v. United States,* 839 F.2d 987, 990 (3d Cir.1988)).

**[2]** It is apparent from the face of the amended complaint that Cibula's procedural due process claims against both the Corrections and Parole Defendants are time barred, as they accrued over two years before he filed suit on October 15, 2012. His claim against the Corrections Defendants accrued on December 28, 2007 (nearly five years before he filed his complaint), when he arrived at Mercer and was summarily labeled a sex offender without receiving any opportunity to contest the classification. Given that Cibula received *no* process at al l, a reasonable person would have known at this point that the Corrections Defendants violated his procedural due process rights. [4]

---

[4] Inmates have a liberty interest in not being labeled sex offenders. *Renchenski v. Williams,* 622 F.3d 315, 326 (3d Cir.2010). Thus, the government must provide process before making such classifications. *See id.* ("We agree that only after a prisoner has been afforded due process may sex offender conditions be imposed on an inmate who has not been convicted of a sexual offense.").

---

**\*135** **[3]** The accrual date of Cibula's procedural due process claim against the Parole Defendants also falls outside of the two-year statutory period. A reasonable person would have been aware that a due process violation occurred when the Parole Board issued the Administrative Action on February 3, 2010, over two-and-a-half years before Cibula filed suit. [5] Without holding a prior hearing, the Parole Board stated:

---

[5] The accrual date could arguably have been even earlier. When the Parole Defendants denied Cibula parole in July 2008 and August 2009 because he had not completed the sex offender treatment program, a reasonable person may well have concluded the Parole Board was classifying him as a sex offender without any pre-classification process.

---

[Y]our offense requires that you participate in sex offender treatment in order to be eligible for parole. Therefore, you will not be interviewed ... for parole/reparole until notification is provided by the Department of Corrections that you have attended and participated in a ... sex offender treatment program. *Cibula,* 2013 WL 3871637, at *2. Based on this agency action, a reasonable person would have concluded that the Parole Defendants labeled Cibula a sex offender without providing any pre-classification

process. Accordingly, his due process claim against the Parole Defendants is time barred.

Cibula's Eighth Amendment claim against the Corrections Defendants also accrued more than two years before he filed suit. He contends the Eighth Amendment violation resulted when the Corrections Defendants disclosed his sex offender status to guards and inmates, which led to abuse and harassment by other inmates. But both Cibula's amended complaint and his appellate brief fail to provide specific facts regarding such disclosures and the resulting abuse and harassment, including the specific times when they occurred. [6] Moreover, on appeal Cibula does not appear to advance any argument that the Corrections Defendants violated his Eighth Amendment rights within the two-year statute of limitations, relying instead on the continuing violations doctrine, an equitable exception to the statutory period. Accordingly, Cibula's Eighth Amendment claim against the Corrections Defendants is also time barred.

[6]  Cibula's allegation that he suffered abuse and harassment until his August 18, 2011, release from prison is insufficient to demonstrate that these acts occurred within the statute of limitations because he fails to plead any facts concerning these acts.

**B.**

Cibula argues that even if his claims accrued over two years before he filed suit, these claims are actionable under the continuing violations doctrine. Under this doctrine, a plaintiff can sue for actions that occurred outside the applicable limitations period if "a defendant's conduct is part of a continuing practice [and] ... the last act evidencing the continuing practice falls within the limitations period." *Cowell,* 263 F.3d at 292 (internal quotation marks and citation omitted). But Cibula has failed to establish the doctrine applies here.

To determine whether a practice was continual, we consider (1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently. *See* **\*136** *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165–67 (3d Cir.2013).[7] A plaintiff must also point to an affirmative act that took place within the limitations period for the continuing violations doctrine to apply. *See Cowell,* 263 F.3d at 293 ("The focus of the continuing violations doctrine is on affirmative acts of the defendants.").[8]

[7]  *Cowell* included a third factor—whether the violations had a degree of permanence that would have triggered the plaintiff's awareness of the duty to assert his or her rights. *Cowell,* 263 F.3d at 292. But we limited *Cowell* 's test for determining whether a continuing violation exists by eliminating the degree of permanence factor in light of *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). *See Mandel,* 706 F.3d at 165–67.

[8]  Although *Mandel* did away with *Cowell* 's degree of permanence factor, it did not eliminate *Cowell* 's requirement of an affirmative act within the limitations period for application of the continuing violations doctrine. Accordingly, although Cibula is correct that the District Court erred by relying in part on the degree of permanence factor in refusing to apply the continuing violations doctrine, we may nevertheless affirm because the court also relied on Cibula's failure to adequately allege defendants committed an affirmative act within the limitations period. *See Cowell,* 263 F.3d at 292; *see also Christ the King Manor v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 321 (3d Cir.2013) (noting we may affirm on any basis supported by the record).

For example, in *Cowell,* plaintiffs brought a substantive due process claim challenging the validity of liens fixed on their property. *Id.* They filed their claim after the statute of limitations had expired, but contended the *existence* of the allegedly illegal liens was an affirmative act that constituted a continuing violation of their due process rights. *Id.* We disagreed, holding the "mere existence of the liens does not amount to a continuing violation" and "the Township's refusal to remove the lien [is not] an affirmative act of a continuing violation." *Id.* We distinguished between "continual unlawful acts," which can serve as the basis of a continuing violation, and "continual ill effects from an original violation," which cannot. *Id.* (quoting *Ocean Acres Ltd. v. Dare Cnty. Bd. of Health,* 707 F.2d 103, 106 (4th Cir.1983)).

[4] [5] As in *Cowell,* neither the Parole nor Corrections Defendants took any affirmative actions during the two-year period before Cibula filed suit that could be construed as part of a continuing violation of his procedural due process or Eighth Amendment rights. The Parole Defendants granted him parole during that time,

but that is not an unlawful action furthering Cibula's constitutional claims. Cibula argues the Corrections Defendants' disclosure of his status as a sex offender during this time qualifies as an unlawful act because it led to abuse and harassment by other inmates. But Cibula failed to plead when the disclosure to other inmates and the abuse and harassment occurred, so we cannot determine whether any of these acts happened within the statute of limitations. *See id.* at 292 ("In order to benefit from the [continuing violations] doctrine, a plaintiff must establish that the defendant's conduct is 'more than the occurrence of isolated or sporadic acts.'" (quoting *West v. Phila. Elec. Co.,* 45 F.3d 744, 755 (3d Cir.1995))).

Even assuming disclosure occurred within the limitations period, we agree with the District Court that the abuse and harassment Cibula allegedly suffered as a result of these disclosures is best viewed as "merely the consequences of the original act of deeming [him] a sex offender in 2007." *See Cibula,* 2013 WL 3871637, at *8; *see also Cowell,* 263 F.3d at 293 (noting that "continual ill effects from an original violation"—unlike "continual unlawful acts"—cannot serve as the basis of a continuing violation). Accordingly, the continuing **\*137** violations doctrine does not apply to Cibula's claims.

### III.

For the foregoing reasons, we will affirm the District Court's order dismissing Cibula's complaint.

**All Citations**

570 Fed.Appx. 129

Case 3:18-cv-01423-ARC Document 26-1 Filed 03/01/19 Page 8 of 15

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)
2017 WL 1738450

2017 WL 1738450
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Michelle SHUTT, Plaintiff,
v.
Stacy PARKS-MILLER, individually and in her official capacity, and Centre County, Defendants.

4:16-CV-1575
|
Filed 05/04/2017

**Attorneys and Law Firms**

Kathleen V. Yurchak, Goodall & Yurchak, P.C., State College, PA, for Plaintiff.

Bruce L. Castor, Jr., Lance Rogers, Rogers Castor, Ardmore, PA, Mary Lou Maierhofer, Margolis Edelstein, Hollidaysburg, PA, for Defendants.

### MEMORANDUM OPINION

Matthew W. Brann, United States District Judge

**I. BACKGROUND**

 *1 On July 29, 2016, Plaintiff, Michelle Shutt, filed a six-count complaint against her former employers, Centre County, and its District Attorney, Stacy Parks-Miller. Each Defendant has filed a motion to dismiss the complaint. Both motions will be granted as to the claims brought pursuant to 42 U.S.C. § 1983, namely Counts I and II. I decline to exercise supplemental jurisdiction over Counts III-IV. The complaint will therefore be dismissed without prejudice so that the Plaintiff may re-file her state law causes of action in the appropriate Court of Common Pleas, should she choose to do so.

**II. DISCUSSION**

 A. Standard of Review
Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding." [1] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." [2] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." [3]

[1] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[2] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[3] *Neitzke*, 490 U.S. at 327.

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions. [4] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed ... the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules." [5] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in Conley v. Gibson and replaced it with a more exacting "plausibility" standard. [6]

[4] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

[5] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009), *Wasserman, supra* at 319-20.

[6] *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U. S. 41 (1957)) ("[a]cknowledging that Twombly retired the Conley no-set-of-facts test").

Accordingly, after Twombly and Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " [7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [8] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)
2017 WL 1738450

Case 3:18-cv-01423-ARC   Document 26-1   Filed 03/01/19   Page 9 of 15

defendant has acted unlawfully." [9] Moreover, "[a]sking for plausible grounds ... calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]." [10]

[7] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[8] *Iqbal*, 556 U.S. at 678.

[9] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[10] *Twombly*, 550 U.S. at 556.

 *2  The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." [11] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " [12]

[11] *Iqbal*, 556 U.S. at 679.

[12] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." [13] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." [14] "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." [15] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." [16]

[13] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[14] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[15] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[16] *Iqbal*, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. [17]

[17] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

I turn now to the Plaintiff's factual allegations, which I must accept as true on a Rule 12(b)(6) motion.

### B. Facts alleged in the complaint

Defendant Stacy Parks-Miller, hereinafter "Parks-Miller," has been District Attorney of Defendant Centre County since January 1, 2010. Plaintiff Michelle Shutt, hereinafter "Shutt," began employment as Parks-Miller's paralegal on June 5, 2012 and resigned for her position on January 6, 2014.

In October 2014, Shutt began working as a paralegal for the Masorti Law Group. On December 29, 2014, she told her new employer, attorney Philip Masorti, that while employed by Parks-Miller she witnessed Parks-Miller forge a common pleas judge's signature on a bail order. Shutt then prepared an affidavit to that effect that was provided to the Bellefonte Borough Police Department, the FBI, and the Pennsylvania Supreme Court's Disciplinary Board. Attached to the affidavit were emails sent by Parks-Miller to Shutt that Shutt had forwarded from her county email account to her private

Case 3:18-cv-01423-ARC Document 26-1 Filed 03/01/19 Page 10 of 15

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)
2017 WL 1738450

email account prior to her resignation from the District Attorney's Office.

According to the complaint, when Parks-Miller learned of the affidavit, she began to investigate Shutt for "theft of emails." On January 20, 2015, the affidavit became public knowledge at a Centre County Commissioner's meeting when various attorneys brought it to the Commissioners attention for investigation. On January 24, 2015, the Bellefonte Borough Police Department executed a search warrant on Parks-Miller's office.

 **\*3** The investigation was later taken over by the Pennsylvania Attorney General's Office and submitted to a grand jury for investigation. Shutt was subpoenaed and testified that she had been directed by Parks-Miller to prepare a fake bail order; that she witnessed Parks-Miller forge the judge's signature; and that she was further directed by Parks-Miller to have the forged order docketed by the Centre County Prothonotary's Office.

On July 31, 2015, the state Attorney General's Office released a report indicating that a grand jury investigation found no criminal activity on the part of Parks-Miller. Consequently, the state Attorney General's Office declined to move forward with any criminal investigation against Parks-Miller.

That same date, Parks-Miller convened a press conference in front of the Centre County Courthouse. The transcription of her statements (at length) is as follows:

> Well—thanks for coming. All right—it's been a long seven months but one of my favorite sayings is a lie can travel halfway around the world while the truth is still putting on its shoes. I am a true believer in justice and the criminal justice system but the truth has finally been revealed. I told everyone at the beginning that I am innocent and a grand jury full of strangers today says I was telling the truth. I do thank the grand jury for their hard work but I also believe in accountability and sometimes that's a dying art. The simple truth in this case is that Michelle Shutt is a liar.
>
> Ms. Shutt came into my office looking for a job after she was let go from a previous job because she cheated her employer. She was let go for under-ringing merchandise. She lied on that job application and when I caught that lie, she begged me to overlook it. I did, wanting to give people a second chance and that is a decision I deeply regret and while I'm tough and I can overlook things, I'm a real person. I have a family. She owes an apology to my grandmother and mother who wondered for the past seven months how someone who can lie publically and get away with it.
>
> This report is crystal clear. Ms. Shutt committed at least three crimes, a false report to police, a false report by writing it out and signing the affidavit and clearly committed felony perjury by testifying in front of the grand jury to these bold faced lies. I demand full criminal responsibility for this behavior. A district attorney is every bit as much a victim as anyone else. I demand that Shutt and anyone else who assisted, encouraged and supported her lies over all these months be investigated and prosecuted. This includes the Centre County Commissioners, their solicitor, Lou Glantz, who the report unequivocally said operated outside the bounds of the law, their authority.
>
> The commissioners balance budgets. They have been on a witch hunt for me. They tried to play police officer, investigator and they been trying to shatter my reputation with lies for months. The grand jury found specifically that I acted in accordance with the law while the commissioners inappropriately engaged the services of special counsel contrary to law. This was after my attorney specifically warned them of this legal point and they ignored it. The impartial grand jury found as a fact that the commissioners disregarded clear statutory requirements in their action and they hired a special counsel spending and squandering tax payers' dollars contrary to law. They have made defamatory statements about me for seven months straight based upon lie after lie. This is men whose job it is to manage fiscal affairs of the government—period. Do you realize the magnitude of what the commissioners have done for the county by this witch hunt in the past seven months? They have been trying with a handful of other people to convince this county and my supporters that the district attorney and law enforcement in Centre County is corrupt with their lies and recently they've besmirched our judges. They are trying to convince the community that you shouldn't trust what's going on down here in Bellefonte, something's amiss.
>
>  **\*4** And why? It all started when I beat Bernard Cantorna in a trial, in a case where a woman almost killed a child. He simply didn't take it well. He had a relationship with her. And he is business partners

Case 3:18-cv-01423-ARC Document 26-1 Filed 03/01/19 Page 11 of 15

**Shutt v. Parks Miller, Not Reported in Fed. Supp. (2017)**
2017 WL 1738450

with Lou Glantz, the county solicitor. They decided to pay me back. They looked for a way to darken my character. I'm too hard on crime apparently. With the lying and conniving Michelle Shutt, who by the way the commissioners did not believe when she first tried to say I had her do campaign work They teamed up with her-Sean McGraw, Bernie Cantorna and Phil Masoriti—to stage this silly lie that has almost unglued our county over the last seven months. They lied at a meeting that started it all. We need to investigate her. We need to involve the Bellefonte police. They knew it had been reported to the Attorney General and they used every commissioner's meeting since then as a bullypulpit to defame me. Some of you bought it and printed it. I hope you now print my innocence with the same ferocity you printed their lies.

The commissioners invaded the district attorney's files and emails and phone records which is patently illegal. They endangered and squandered resources and they actually looked at ongoing investigations. These men who are only here to balance budgets and we had to sue them to stop it. Once I caught them, they said they wouldn't do it again. I had to sue them along with the judges to stop them from looking in files and actually compromising ongoing investigations and threatening police officers' safety.

Guess who the commissioners gave my records to? Sean McGraw and Bernie Cantorna, ignoring requests from other defense attorneys but favoring them. We have shown you these connections but the press has failed to print it. The same exact people who accused me of forgering.

Sean McGraw is Michelle Shutt's lawyer. He called her a whistle blower in the beginning perhaps hoping for a big lawsuit. Her firm said she was brave for telling the truth. Nothing can be further from the truth. She is a felon. They pretend, the commissioners pretend they are champions of open records, that is a smoke screen because we caught them breaking the law.

The lawsuit was only to keep them out of my records and to point people to me when they had an open records request. I handled open records requests during the Sandusky matter. I think I know how to operate within the bounds of the law. They have been selling you a smokescreen and you have been buying it. What did Judge Kurtz say about the commissioners when he learned how they were operating under the right to know law and breaking it? He said they broke the law, violated the constitution and violated my privacy. Sworn elected official in active office have violated the law. Where is that headline? He said their behavior was unconscionable. They gave out my private phone number knowing it was protected under the law. I received threats from people I prosecuted. One man whose brother I prosecuted threatened to pay me back with sexual violence. Where is that headline?

So what's going on down here at Willowbank? Criminal behavior by Michelle Shutt and others. That's what. I've beaten them at every turn. I won every frivolous motion filed by Sean McGraw who has ulterior motives to try to bolster Michelle Shutt. I won my civil lawsuit handily against the commissioners who were deemed law breakers by a judge who said their behavior was unconscionable and now I have been proven innocent of signing the judge's name. Each time the commissioners act more outrageous, they double down and destroy our county's faith and reputation across the state.

But I tell Centre County citizens this—I will not be bullied by Centre County commissioners or people who seek to destroy my reputation with lies. I will remain your independent prosecutor. I will be the prosecutor you can trust. I will not be told who to prosecute and I will not be bullied by any club or clique. I will not be influenced or beholden to anyone. I will do what is right based upon the facts and I don't engage in cronyism or let politics enter the DA's office. It's not going to happen. I made promises to this community and they will not beat me down with lies. I respect the law and the constitution and I demand that everyone that was involved in this corruption be prosecuted in this matter and I will fight against corruption as your DA.

**\*5** This stops here and now and I will not stop until the right people are held accountable and I do urge the public to make smart decisions this Fall and vote those bums out or we will never return to normal down at this courthouse. A system cannot survive with unscrupulous people attacking other arms of government for petty and personal motives. They are tearing us apart down here and frittering away untold amounts of money for no good reasons other than personal agendas. People have a voice and come fall and you must use it. And I thank the grand jury for what they have done.

Several news sources picked up and re-published Parks-Miller's statements in various news articles. Several were, naturally, online sources, namely youtube.com, statecollege.com and philly.com. The other was the Centre Daily Times, a print newpaper, and principal newspaper of record in Centre County.

Parks-Miller filed a civil suit against Shutt and others, which was removed to this Court on September 9, 2015. I dismissed that action in its entirety. As to Shutt, the Parks-Miller action was dismissed as all the claims agianst her were based on her grand jury testimony, which I held to be immune from suit.

Shutt now alleges that due to Parks-Miller's actions, and statements, Shutt's "opportunities for employment in the legal field have been eliminated, as have her prospects for comparable employment." Her complaint against Parks-Miller sets forth her defamation theory.

C. Count I: 42 U.S.C. § 1983 Retaliation for Exercise of Activity Protected by the First/Fourteenth Amendment Rights (Against All Defendants)

In order for a plaintiff to prevail under 42 U.S.C. § 1983, he must establish two elements: first, that the conduct complained of was committed by a person acting under color of state law; and second, that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. [18]

[18] See Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

"In general, constitutional retaliation claims are analyzed under a three-part test." [19] " Plaintiff must prove (1) that [it] engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." [20]

[19] Mun. Revenue Servs., Inc. v. McBlain, 347 Fed. Appx. 817, 823 (3d Cir. Pa. 2009) (internal citations omitted).

[20] Id.

In this matter, Shutt is alleging a First Amendment retaliation claim as incorporated by the Fourteenth Amendment. The *First Amendment* to the United States Constitution protects citizens right to speech. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." [21] "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." [22]

[21] Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000), See ACLU v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); see also Pickering v. Board of Educ., 391 U.S. 563, 574, 20 L.Ed. 2d 811, 88 S. Ct. 1731 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech").

[22] Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 415-416 (4th Cir. 2006), citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 674, 116 S. Ct. 2342, 135 L.Ed. 2d 843 (1996); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000); see also Perry v. Sindermann, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L.Ed. 2d 570 (1972) ("If the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited").

**\*6** "Thus, by engaging in retaliatory acts, public officials place informal restraints on speech "allowing the government to 'produce a result which [it] could not command directly.' " [23] "Such interference with constitutional rights is impermissible." [24] "[A] public official's malicious intent, taken alone, cannot amount to a retaliatory response." [25]

[23] Suarez Corp. Indus., 202 F.3d at 685

[24] Id. citing Perry v. Sindermann, 408 U.S. 593, 597, 33 L.Ed. 2d 570, 92 S. Ct. 2694 (1972) (alterations in original) (citation omitted).

[25] Balt. Sun Co., 437 F.3d at 420.

"A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected

Case 3:18-cv-01423-ARC Document 26-1 Filed 03/01/19 Page 13 of 15

**Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)**
2017 WL 1738450

activity."[26] "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one—we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case."[27] "Because our analysis of the adverse impact is objective, it can be resolved as a matter of law."[28]

[26]   *Balt. Sun Co.*, 437 F.3d at 416, citing *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).

[27]   *Balt. Sun Co.*, 437 F.3d at 416, citing *Constantine*, 411 F.3d at 500; *Wicomico County*, 999 F.2d at 786; see also *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (tailoring adverse impact analysis to specific circumstances presented).

[28]   *Balt. Sun Co.*, 437 F.3d at 416.

In the case at bar, I conclude that there is no retaliation as a matter of law as the Defendants did not engage in conduct that would chill a person of ordinary firmness. In "retaliation cases involving 'speech against speech' there should be a 'threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court.' "[29] A "state-law theory of per se defamation does not sufficiently demonstrate harm and therefore does not establish a federal retaliation claim."[30] The "alleged retaliation did not come in the form of denial of a permit or threat of a lost contract."[31] "Rather, it was a group of statements none very kind about" Shutt.[32]

[29]   *Zaloga v. Borough of Moosic*, 841 F.3d 170, 177 (3d Cir. 2016) citing *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011).

[30]   *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011).

[31]   *Id.* at 646.

[32]   *Id.*

"Retaliatory insults or accusations may wound one's soul, but by themselves they fail to cross the threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court."[33] Moreover, other circuits have held that allegedly defamatory statements alone are insufficient to deter a person of ordinary firmness from future speech.[34]

[33]   *Id.*

[34]   See, e.g., *Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010); *Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005).

**\*7** Although I have determined that Shutt does not have a Constitutional claim based on the statements made by Parks-Miller at the July 31, 2015 press conference, she may nevertheless have a state tort cause of action, to which the undersigned expresses no opinion.

D. <u>Count II: Violation of 42 U.S.C. § 1983 False Public Statements (Against All Defendants)</u>

The allegations set forth in Count II have confused both the parties and the Court, as there is no "false public statements" cause of action under federal law. The Court initially surmised that Shutt was attempting to federalize defamation, but this does not appear to be the case. In her brief opposing each Defendants' motion to dismiss, she explained that she is not, in fact, bringing a defamation claim under Section 1983. Shutt further clarified in her brief opposing Parks-Miller's motion that Count II is a "fourteenth amendment violation" of "her ability to pursue her chosen career and profession" and that "as she included damages to her occupation, Shutt has adequately pled a violation of their [sic] Fourteenth Amendment due process rights."[35] I respectfully disagree.

[35]   ECF No. 22 at 38.

Shutt has not, nor can she, adequately plead a due process claim. The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States."[36] "Reputation alone is not an interest protected by the Due Process Clause."[37] Moreover, defamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process claim.[38]

[36]   *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that defamation by itself does not harm a liberty interest protected under the Fourteenth Amendment).

Case 3:18-cv-01423-ARC Document 26-1 Filed 03/01/19 Page 14 of 15

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)
2017 WL 1738450

37    *Dee v. Borough of Dunmore,* 549 F.3d 225 (3d Cir. 2008) (internal citations omitted).

38    See *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 399-404 (3d Cir. 2000).

In order "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest ... guaranteed by state law or the Constitution." [39] "In the public employment context, the "stigma-plus" test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." [40] "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements (1) were made publicly, and (2) were false." [41] Here, Shutt has alleged that Parks-Miller made false stigmatizing statements at the July 31, 2015 press conference.

39    *Id.*

40    *Hill v. Borough of Kutztown,* 455 F.3d 225, 236 (3d Cir. 2006) citing *Codd v. Velger,* 429 U.S. 625, 628 (1977).

41    *Hill,* 455 F.3d at 225 (internal citations omitted).

The "plus" of the "stigma-plus" test can be termination or constructive discharge, without respect to whether the employee has a property interest in the lost job. [42] The Honorable Joy Flowers Conti, writing for the United States District Court for the Western District of Pennsylvania, has succinctly explained when something other than the loss of government employment constitutes the necessary "plus" to maintain an action under the Fourteenth Amendment, as follows:

> **\*8** The plus prong is typically termination of employment, but reputational damage that occurs "in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution" is actionable. *D & D Assoc., Inc. v. Bd. of Educ. of N. Plainfield,* 552 Fed.Appx. 110, 113 (3d Cir. 2014) (*citing Clark v. Twp. of Falls,* 890 F.2d 611, 619 (3d Cir. 1989)); *Lockett,* 529 Fed.Appx. at 296; *Brown,* 470 Fed.Appx. at 91. Although deprivation of the "liberty to pursue a calling or occupation" or to "earn a living" have been deemed sufficient to satisfy the plus prong, a generalized "possible loss of future employment opportunities," and "financial harm" are insufficient to support a reputation-based due process claim. *Simpson v. Nicklas,* 500 Fed.Appx. 185, 188 (3d Cir. 2012) (*citing Clark,* 890 F.2d at 620, and *Sturm v. Clark,* 835 F.2d 1009, 1013 (3d Cir. 1987)); *Thomas,* 463 F.3d at 297; *Hill,* 455 F.3d at 232-33; *see Arneault v. O'Toole,* 513 Fed.Appx. 195, 198-99 (3d Cir. 2013) (loss of possible business prospects by being required to disclose an unfavorable fact on future applications does not satisfy the plus prong). [43]

42    *Id.* at 238.

43    *Kahan v. Slippery Rock Univ. of Pennsylvania,* 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd,* 664 Fed.Appx. 170 (3d Cir. 2016)

The "plus" element of the "stigma-plus" test is what is lacking in the present action. First, Shutt voluntarily left her employment with Parks-Miller and Centre County well before the July 2015 press conference. Second, she has not alleged deprivation of another Constitutionally guaranteed right. Her generalized allegations regarding her inability to pursue her paralegal career are insufficient.

This absent element in the "stigma-plus" test signals to this Court that this is merely a garden variety state law defamation claim as opposed to a more nuanced Fourteenth Amendment violation. Accordingly, Shutt's substantive due process claim for any reputational injury that decreased her ability to earn a living compels dismissal.

### III. CONCLUSION

Having concluded that there are no federal causes of action, and no basis upon which to permit amendment, as amendment would be futile, [44] I decline to exercise supplemental jurisdiction over the state law claims and will dismiss the action in its entirety. Dismissal will be without prejudice as to the state law claims.

44    "Futility" means that the complaint even if amended, would still fail to state a claim upon which relief could be granted. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997).

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1738450

---

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.