## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAAC W. SANDERS, | |
| Plaintiff, | NO. 3:18-CV-1423 |
| v. | (JUDGE CAPUTO) |
| PENNSYLVANIA'S STATE SYSTEM OF HIGHER EDUCATION and EAST STROUDSBURG UNIVERSITY, | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is a Motion to Dismiss filed by Defendants Pennsylvania's State System of Higher Education ("PASSHE") and East Stroudsburg University ("ESU"). (Doc. 37). Plaintiff Isaac W. Sanders alleges in his Second Amended Complaint (Doc. 35) that Defendants violated federal and state law when they fired and defamed him over ten years ago. (*See generally* Doc. 35). Defendants contend that Sanders's suit is barred by the applicable two-year statute of limitations. (*See* Doc. 39 at 8–9). Sanders, for his part, argues Defendants' continued conduct from 2008 until 2018 kept his claims alive. (*See* Doc. 41 at 10). Because Sanders concedes his federal claims accrued in 2008, however, those claims are untimely. And because Sanders does not allege an independent jurisdictional basis for his state law claims, they will be dismissed without prejudice. Defendants' Motion will therefore be granted.

1

**I. Background**

According to the complaint, ESU hired Sanders in 2000 as Vice President for Institutional Advancement and Executive Director of the East Stroudsburg University Foundation (the "Foundation"). (Doc. 35 at ¶ 27). In August 2007, a student filed a complaint with the Office of Diversity and Equal Opportunity ("ODEO"), alleging sexual harassment by Sanders. (*See id.* ¶¶ 45–46). Also during this time, ESU received several anonymous letters alleging improprieties by Sanders from August through October 2007. (*Id.* ¶¶ 47–48). One letter suggested Sanders, as chair of the Foundation, mismanaged funds. (*See id.* ¶ 51). The remaining letters made "various accusations" about Sanders, but "lacked specific details." (*See id.* ¶¶ 50–52, 56–57).

In light of the allegations of financial impropriety, ESU hired an accounting firm to perform a forensic audit on the Foundation's finances. (*Id.* ¶¶ 89–91). The results of the audit produced no evidence of alleged wrongdoing by Sanders. (*See id.*). Per ESU policy, the ODEO conducted an investigation into the sexual harassment allegations against Sanders. (*See id.* ¶¶ 63–64). A final written report on their investigation was submitted to University President Robert J. Dillman on December 10, 2007. (*Id.* ¶ 72). In correspondence to the complaining student on January 7, 2008, Dillman stated the ODEO investigation found insufficient evidence to support the allegations against Sanders and the case would be closed. (*See id.* ¶¶ 73–74). No student thereafter filed any complaint against Sanders. (*Id.* ¶ 75).

A few months later, in June 2008, a local newspaper published a story about allegations that Sanders had sexually harassed students at ESU. (*See id.* ¶ 124). In response to the story, Dillman placed Sanders on administrative leave (*see id.* ¶ 126), and PASSHE hired Black & Gerngross, a

Philadelphia law firm, to conduct an internal investigation into the allegations. (*Id.* ¶ 128–129). Throughout the summer of 2008, more allegations of sexual harassment by Sanders surfaced. (*See id.* ¶¶ 144–148). At the completion of the second investigation, Black & Gerngross reported that it had failed to find credible evidence that Sanders sexually harassed anyone. (*See id.* ¶ 151). Because Defendants were not satisfied with the outcome of the second report, another outside firm was hired to perform a third investigation into these same allegations. (*Id.* ¶¶ 156–158). In September 2008, Dillman received the third investigation report performed by PASSHE's outside counsel. (*Id.* ¶ 175). Sanders does not allege what the third investigation found, but after receiving the report, Dillman held a conference with Sanders on October 3, 2008. (*Id.* ¶ 176). The conference was a pretext "designed to mask the true intent of Dillman and PASSHE to terminate Sanders" for unfounded allegations of sexual harassment. (*Id.* ¶ 177). Accordingly, on October 22, 2008, Sanders was terminated from ESU effective December 21, 2008. (*Id.* ¶ 180).

In February 2009, six former ESU students filed a civil rights action alleging Sanders sexually harassed them while he was employed at ESU. (*Id.* ¶¶ 199–200). The case was removed to the Middle District of Pennsylvania in March 2009. (*Id.*). At all stages of the litigation the Commonwealth did not defend or indemnify him. (*Id.* ¶ 201). He should have been defended by the Commonwealth as other ESU employees in the case had. (*Id.* ¶ 210). Moreover, because of Sanders's unemployment and mounting debt from defending these allegations, he was forced to file for bankruptcy on August 20, 2009. (*Id.* ¶ 241).

The jury found in Sanders's favor on October 31, 2014. (*Id.* ¶ 201). Despite this, from his termination in 2008 through 2018, newspapers published articles falsely accusing him of

3

improprieties—none of which were denied or corrected by Defendants. (*See id.* ¶¶ 214, 216, 218, 221, 229, 230, 245, 250, 252, 255, 256, 260, 261, 264, 285, 296). Additionally, at the conclusion of the civil rights case in July 2018, the Commonwealth, having been awarded costs, filed a motion to vacate the award of costs. (*Id.* ¶ 286). (Sanders did not move for costs himself or join in the Commonwealth's motion for costs, *see Bernard v. East Stroudsburg Univ.*, No. 3:09-cv-00525, Doc. 228 (M.D. Pa. Dec. 2, 2014).) Sanders suggests this was the latest "governmental action designed solely to convey that Isaac Sanders was guilty of student sexual assault." (*Id.*). Sanders argues the Commonwealth treated the case as if he were found guilty and Defendants never corrected this error. (*Id.* ¶ 287).

Sanders commenced this action on July 17, 2018. (*See generally* Doc. 1). He alleges two federal causes of action ("stigma plus" and a violation of the "Civil Rights Act") and two state causes of action (intentional infliction of emotional distress and defamation). (*See* Doc. 35 at ¶¶ 304–343). Defendants responded with the instant Motion to Dismiss (Doc. 37), which has been fully briefed and is now ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, my role is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). A court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a

4

claim. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

Defendants argue all of Sanders's claims are barred by Pennsylvania's statute of limitations. (*See* Doc. 39 at 6–12). A statute of limitations defense is technically an affirmative defense meant to be raised in an answer, not a motion to dismiss. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). A limitations defense may be raised in a pre-answer motion, however, "if the time alleged in the statement of a claim shows that the cause of action has not been [timely] brought." *Id.* (quotation and footnote omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

I will start with Sanders's federal claims. Sanders's federal claims are all subject to Pennsylvania's two-year statute of limitations for personal injury actions. *See* 42 Pa. Cons. Stat. § 5524; *see also Wallace v. Kato,* 549 U.S. 384, 387 (2007).[1] To decide whether the statute of

---

[1] Defendants note the only two claims Sanders could be alleging under the "Civil Rights

limitations has run, I must first determine when Sanders's claims accrued. *See Wallace,* 549 U.S. at 388. Sanders's claims accrued when he "knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Phila.,* 142 F.3d 582, 599 (3d Cir. 1998). That would normally require me to look at the elements of Sanders's claims and, comparing them with his allegations, see when each element was met. *See Wallace,* 549 U.S. at 388 (accrual occurs "when the plaintiff has a complete and present cause of action" (quotation omitted)).

Critically, Sanders *agrees* that his claims accrued when ESU fired him on October 22, 2008. (*See* Doc. 41 at 16). He instead argues his suit is timely under a "continuing violations theory." (*Id.*). This doctrine provides that:

> [W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). For Defendants' conduct to revive Sanders's claims under this doctrine, Sanders must allege that "the last act evidencing the continuing practice falls within the limitations period" and that Defendants' "conduct is more than the occurrence of isolated or sporadic acts." *Id.* at 292.

"However, this [continuing conduct] theory does not apply when plaintiffs are aware of the

---

Act" in his fourth cause of action are § 1983 or Title VII claims. (*See* Doc. 30 at 7). Sanders has not contested this point. (*See* Doc. 41). If he is bringing a Title VII claim, Sanders must have first brought a complaint to the Equal Employment Opportunity Commission. *See Seredinski v. Clifton Precision Prod. Co.,* 776 F.2d 56, 61 (3d Cir. 1985). So Sanders's only Civil Rights Act claim would be a § 1983 claim subject to Pennsylvania's two-year statute of limitations.

6

injury at the time it occurred." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.* 331 F.3d 406, 417 n.6 (3d Cir. 2003) (citing *Kichline v. Consol. Rail Corp.,* 800 F.2d 356, 360 (3d Cir. 1986)). Sanders was aware his injury occurred when ESU fired him on October 22, 2008. (*See* Doc. 41 at 16). Thus, even if Defendants' actions through 2018 met the elements of continuing conduct, his claims are time-barred because he knew in October 2008 he suffered an injury underlying all his claims. (*See* Doc. 35 ¶¶ 304–343).

The fact that Sanders alleges additional stigma within two years of filing his complaint is immaterial. (*See* Doc. 35 ¶¶ 287, 291, 293). A "continuation of the 'ill effects' of the original deprivation" of Sanders's rights does not constitute continued conduct. *Arneault v. O'Toole,* 864 F. Supp. 2d 361, 405 (W.D. Pa. 2012); *see Bucholz v. Midwestern Intermediate Unit IV,* 128 F. App'x 890, 895 (3d Cir. 2005); *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 570 (E.D. Pa. 2004) (a defendant's "refusal to undo a discriminatory decision is not a fresh act of discrimination" (quoting *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992))). Nor do fresh damages revive stale claims. *See Wallace,* 549 U.S. at 391 ("Were it otherwise, the statute [of limitations] would begin to run only after a plaintiff became satisfied that he had been harmed enough . . . .").

Because Sanders concedes his federal claims accrued long before 2016, those claims are barred by Pennsylvania's statute of limitations. Dismissal will be with prejudice, as amendment would be futile. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 114 (3d Cir. 2002).

That leaves Sanders's state law claims. The jurisdictional basis for these claims is unclear. Sanders does not explicitly invoke either diversity jurisdiction or supplemental jurisdiction in his

complaint. (*See* Doc. 35 at. ¶¶ 9–11). I will therefore treat Sanders's state law claims as supplemental, and dismiss them without prejudice, given the dismissal of Sanders's federal claims. *See Kohn v. AT&T Corp.*, 58 F. Supp. 2d 393, 421-22 & n.31 (D.N.J. 1999) (declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) where all federal claims were dismissed, where it "appear[ed]" the parties were not diverse, and where the plaintiff "alleged no independent basis for jurisdiction over the remaining State law claims"); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (courts "must" dismiss pendent state claims "unless considerations of judicial economy, convenience, and fairness to the parties" provide otherwise).

## IV. Conclusion

For the above stated reasons, Defendants Motion to Dismiss will be granted. Sanders's federal claims will be dismissed with prejudice, and his state law claims will be dismissed without prejudice.

An appropriate order follows.

<u>August 14, 2019</u>                                                                    <u>/s/ A. Richard Caputo</u>
Date                                                                                                      A. Richard Caputo
                                                                                                            United States District Judge